HOLDAWAY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a dissenting opinion.
HOLDAWAY, Judge:
Pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), the petitioner, Patrick Maddalino, seeks attorney fees and expenses incurred during the prosecution of a petition to this Court for extraordinary relief in the nature of a writ of mandamus. The Secretary has filed a response opposing the application. For the following reasons, the Court will deny the petitioner’s application.
I. FACTS
On December 7, 1998, the petitioner filed with this Court a petition for extraordinary relief in the nature of a writ of mandamus. The petitioner claimed that on July 22, 1996, he had filed a Notice of Disagreement (NOD) to a VA regional office (VARO) decision which had granted him service connection of his post-traumatic stress disorder (PTSD) and assigned a 30% disability rating. In his NOD, the petitioner argued that he was entitled to a 100% disability rating for his PTSD. He also claimed in his petition to this Court that the Secretary had issued him a Statement of the Case on August 20, 1996, that he had filed his substantive appeal on August 27, 1996, but that the Board of Veterans’ Appeals (“BVA” or “Board”) did not docket his appeal until July 18,1997. Furthermore, the petitioner stated that the Secretary had informed him that the VARO had not forwarded his appeal to the Board nor had the Board advised the petitioner in writing of the assignment of the *477 appeal to the Board’s docket. The petitioner proffered that in May 1997 and again in October 1998, he had requested that the Secretary transfer his appeal to the Board and, if necessary, to this Court. Thus, the petitioner contended that the inaction of the VARO was frustrating his right to appeal to the Board. The petitioner attached the relevant documents to his petition in order to substantiate his contentions. In order to remedy this situation, the petitioner sought to compel the Secretary to do one or more of the following:
(1) issue a Supplemental Statement of the Case [SSOC]; (2) add the Substantive Appeal (“Appeal”) to the Board of Veterans’ Appeals (“BVA”) docket with a number contemporaneous with the date of receipt by the Secretary; (3) inform the Petitioner in writing of the assignment of the Appeal to the BVA docket; (4) inform the Petitioner of any inadequacy in the substantive appeal, if any; or (5) issue a decision.
After reviewing the petition, the Court then ordered the Secretary to respond.
On January 15, 1999, the Secretary filed his response. First, the Secretary admitted that there had been a one-year delay from August 1996 to July 1997 in docketing his appeal to the Board but that this error had already been corrected by that July 1997 docketing. The Secretary contended that the petitioner’s appeal to the Board had been further delayed because the disability rating schedule for PTSD had been changed. The Secretary stated that this delay was necessary in order for a new medical examination to be provided and for the VARO to evaluate his condition under the new rating schedule. The Secretary attached a declaration from John S. Limpose, the employee at the VARO responsible for the petitioner’s case. According to Mr. Limpose’s declaration, the petitioner’s re-examination had been provided in March 1998 and an SSOC had been sent in June 1998. Mr. Limpose reported that the petitioner refiled his substantive appeal shortly thereafter. Mr. Limpose’s declaration stated that in October 1998, the petitioner submitted a “Social Security Earning statement” and a letter from his attorney requesting waiver of review of this evidence by the VARO so that the matter could be sent directly to the Board. Finally, Mr. Limpose stated that the petitioner’s case would be “re-certified for BVA review and transferred out today.”
On January 15, 1999, the petitioner filed a reply reasserting his request that his appeal be docketed with the Board. This Court then ordered the Secretary to indicate whether the petitioner’s appeal actually had been docketed with the Board. The Secretary responded by attaching a declaration of Nancy Stackhouse, the Board’s Director of Administrative Services, who stated that the Board received the petitioner’s file on January 20, 1999. The petitioner filed a reply to the Secretary’s response and argued that although the Board had received his file, it had not assigned his appeal a docket number which corresponded to the date he originally filed his appeal in 1996. The Court then ordered both parties to participate in a conference conducted by Richard A. Bednar, a member of the Court’s Central Legal Staff. The Court’s order, dated April 1, 1999, stated that the “purpose of the conference is to discuss the future course of these proceedings and the possibility of resolving the remaining conflict without Court intervention.” Apparently, the remaining issues between the parties were resolved during this conference. In May 1999, the petitioner filed a status report which stated, “The Secretary has completed the relief sought in the Petition” and' that his appeal had been assigned “a BVA docket number contemporaneous with the date of receipt by the Secretary.” Finding that all of the relief sought had been provided, the Court dismissed the petition as moot in an order dated May 21, 1999.
*478 II. ANALYSIS
EAJA is a waiver of sovereign immunity, and its provisions must be strictly construed in the government’s favor. See Grivois v. Brown, 7 Vet.App. 100, 101 (1994). The EAJA statute provides that:
a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ..., brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that other special circumstances make an award unjust.
28 U.S.C. § 2412(d)(1)(A). Therefore, in order to be awarded EAJA fees, the petitioner has the burden of proof to show by a preponderance of the evidence that, inter alia, he is the “prevailing party.” See Commissioner v. Jean, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); Chandler v. Gober, 11 Vet.App. 6, 7-8 (1997). “To be considered a ‘prevailing party pursuant to EAJA, it must be shown that the litigant prevailed (1) by succeeding on the merits; (2) as the result of the suit’s ‘catalytic effects’; or (3) by application of the ‘inevitable victory’ test.” Weierbach v. West, 12 Vet.App. 486, 487 (1999).
In his application, the petitioner argues that he is the prevailing party under the catalytic effects theory. In order to demonstrate prevailing party status under this theory, the applicant must show: “(1) a causal connection between the litigation and the relief obtained, and (2) that the fee-target did not act gratuitously in granting relief.” Id. at 488 (quoting Gglietti v. Secretary, HHS, 900 F.2d 397, 400 (1st Cir.1990)). The applicant must show by a preponderance of the evidence that “but for” the litigation, the Secretary would not have granted the relief sought. See id. Although the timing of events during a lawsuit may be significant, “ ‘the mere existence of temporal coincidence ... cannot alone suffice’ to engage the gears of the catalyst test.” Id. (quoting Langton v. Johnston, 928 F.2d 1206, 1225 (1st Cir.1991)).
The petitioner argues that the action taken by the Secretary was “wholly dependent upon the filing of the litigation” and thus he is a prevailing party under the catalyst theory. However, the petitioner has not offered a scintilla of evidence to support this theory other than his own unsubstantiated allegations. In order for a petitioner to carry his burden of proving that he is a prevailing party, he must do more than merely allege that without this litigation, the Secretary would not have granted his relief. While it may be true that this litigation may have hastened the relief sought by the petitioner, i.e., docketing of his appeal with the Board, he has not offered any evidence that the relief sought would not have been granted without litigation. The evidence offered by the Secretary shows that in June 1998, the VARO issued an SSOC. On October 22, 1998, the petitioner submitted additional evidence and waived his right to review of this evidence by the VARO. Before the VARO could respond, the petitioner filed his request for a writ of mandamus on December 7, 1998, less than seven weeks after he submitted the additional evidence. The record does not show nor does the petitioner allege that he took any action to inquire about the status of his claim after he had filed his request in October 1998 that his right to VARO review be waived and his appeal be sent to the Board. See Costanza v. West, 12 Vet.App. 133, 134 (1999) (Court denied petition for a writ of mandamus where petitioner “provide[d] no evidence establishing that letters, telephone calls, visits to appropriate authorities, or other efforts ha[d] been undertaken to resolve delay in the processing of his case”). Simply because the VARO had not responded within a few weeks does not imply that the VARO had no intention of granting the relief sought, i.e., forwarding his appeal to the Board. In fact, the rec *479 ord shows that the VARO had sent his appeal to the Board in 1997 but that his appeal was delayed in order for the VARO to reexamine and reevaluate his condition under the new rating schedule, an action done to afford him the highest possible rating. See generally Karnas v. Derwinski, 1 Vet.App. 308 (1991). Therefore, the Court finds as a fact that the petitioner has not carried his burden of showing a causal connection between the litigation and the relief granted because he has not shown that the VARO would not have forwarded his appeal to the Board.
Although the Court will deny this application on other grounds, the Court is not convinced that, even if the petitioner’s suit had been the catalyst for a favorable decision, EAJA fees could be granted for representation at the VARO level where there has been no final Board decision as to the claim. EAJA is a reimbursement statute. See 28 U.S.C. § 2412. Under this statute, the prevailing party must have incurred, at least potentially, an obligation to pay fees to an attorney. Id. Under the VA system, a claimant generally cannot incur legal fees at the VARO level. 38 U.S.C. § 5904(c)(1) (“a fee may not be charged ... for services of agents and attorneys with respect to services provided before the date on which the Board ... makes a final decision in the case”). In this case, since the petitioner has no legal capacity to contract with an attorney on a fee basis prior to a final decision, EAJA could not be applicable because fees cannot legally be incurred. Essentially what this petitioner is attempting to do is circumvent the system established by Congress by having his attorney represent him at the VARO and use the threat of litigation to move his claim ahead in line of other claimants, some of whom may have been waiting even longer. This is not the purpose of a writ of mandamus. The Court simply is not inclined to meddle in or micromanage the duties assigned to the Secretary and his officers.
III. CONCLUSION
After a review of the pleadings and the evidence proffered by the parties, the petitioner’s application for attorney fees and expenses under EAJA is DENIED.